**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **MLCJR LLC, et al.,** | **CASE NO. 23-90324 (CML)** |
| *Debtors[1]* | **(Jointly Administered)** |

| | |
|---|---|
| **MICHAEL D. WARNER, solely in his official capacity as Chapter 7 Trustee of Cox Operating, L.L.C.,** | |
| *Plaintiff* | |
| **v.** | **ADV. PRO. NO. 25-03344** |
| **FAB-CON, INC.,** | |
| *Defendant* | |

**TRUSTEE'S MOTION FOR DEFAULT JUDGMENT AGAINST**
**FAB-CON, INC.**

**NOW INTO COURT**, through undersigned counsel, comes Michael D. Warner, acting solely in his official capacity as the duly elected Chapter 7 Trustee (the "***Trustee***") for the bankruptcy estate (the "***Estate***") of Debtor Cox Operating L.L.C. ("***Cox Operating***") and Plaintiff in the above-captioned adversary proceeding (the "***Adversary Proceeding***"), who respectfully moves this Court to enter a default judgment in his favor and against defendant, Fab-Con, Inc. ("***Defendant***") pursuant to FED. R. CIV. P. 55(b)(2) (this "***Motion***").

---

[1] The "***Debtors***" in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR, LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).

## EXHIBITS IN SUPPORT

In support of this Motion, the Trustee submits the following evidence:

(i)     **Exhibit** "**A**" – The *Declaration Under Penalty of Perjury of Rodney Dykes in Support of Plaintiff's Motion for Default Judgment Against Fab-Con, Inc.*

     a.  **Exhibit** "**A(1)**" – A true and correct copy of the check and associated bank records evidencing the first Transfer's clearance;

     b.  **Exhibit** "**A(2)**" – A true and correct copy of the check and associated bank records evidencing the second Transfer's clearance;

(ii)    **Exhibit** "**B**" – *The Declaration Under Penalty of Perjury of Michael D. Warner in Support of Plaintiff's Motion for Default Judgment Against Fab-Con, Inc.*

     a.  **Exhibit** "**B(1)**" – A true and correct copy of proof of claim number 486 (according to the Debtors' (now former) claims agent, Kroll, LLC's ("**Kroll**") records);

     b.  **Exhibit** "**B(2)**" – A true and correct copy of proof of claim number 709 (according to Kroll's records);

     c.  **Exhibit** "**B(3)**" – A true and correct copy of *Fab-Con Inc.'s Application for Allowance of Administrative Expense Claim*;

     d.  **Exhibit** "**B(4)**" – A true and correct copy of the Louisiana Secretary of State's records regarding Defendant, as printed out of from the Louisiana Secretary of State's website;

     e.  **Exhibit** "**B(5)**" – A true and correct copy of the communications among the Trustee's and Defendant's counsel regarding the Trustee's intent to move forward with default proceedings;

     f.  **Exhibit** "**B(6)**" – A true and correct copy of the Trustee's Form-2; and

## RELIEF REQUESTED

As set forth more fully in the accompanying *Memorandum in Support of Trustee's Motion for Default Judgment Against Fab-Con, Inc.*, which is submitted contemporaneously with this Motion and incorporated herein as if copied *in extenso*, the Trustee prays that after due proceedings are had, this Court enter a default judgment in his favor and against Defendant:

(i)     avoiding and recovering for the Estate, pursuant to 11 U.S.C. §§ 547 and 550, two prepetition transfers (together, the "***Transfers***" and individually, a "***Transfer***") Cox Operating made to Defendant totaling $857,108.75;

(ii)    disallowing any and all claims that Defendant has filed or asserted against Cox Operating and/or the Estate pursuant to 11 U.S.C. § 502(d);

(iii)   awarding pre-judgment interest at the maximum legal rate running from the date of the Trustee's judicial demand to return all Transfers to the date of the default judgment;

(iv)    awarding post-judgment interest at the maximum legal rate running from the date of the default judgment until the date such default judgment is paid in full;

(v)     awarding to the Trustee the costs and expenses incurred in the Adversary Proceeding; and

(vi)    for such other relief deemed just.

Dated: January 29, 2026                Respectfully submitted,

                                **STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:    */s/ Brooke W. Altazan*
            William S. Robbins (Tx. Bar # 24100894)
            wrobbins@stewartrobbins.com
            Brooke W. Altazan (Tx. Bar # 24101002)
            baltazan@stewartrobbins.com
            Paul Douglas Stewart, Jr. (La. Bar # 24661)
            *Admitted to Southern District of Texas*
            *(SDTX Federal No. 432642)*
            dstewart@stewartrobbins.com
            301 Main Street, Suite 1640
            Baton Rouge, LA 70801-0016
            Telephone: (225) 231-9998
            Facsimile: (225) 709-9467

            ***Counsel for Michael D. Warner, Chapter 7 Trustee***

Page **3** of **4**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 29th day of January 2026, a true and correct copy of the above and foregoing pleading will be served in the following manner:

(1) Electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District, including the United States Trustee and counsel for the Debtors; and

(2) Via United States mail, postage prepaid and addressed:

Fab-Con, Inc.
Through its Registered Agent, Patrick Gros
651 River Highland Blvd
Covington, LA 70433

Fab-Con, Inc.
c/o Joseph Briggett
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170

<u>/s/ Brooke W. Altazan</u>
Brooke W. Altazan

Page **4** of **4**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:                                                    CHAPTER 7

MLCJR LLC, et al.,                                        CASE NO. 23-90324 (CML)
    *Debtors[1]*                                        (Jointly Administered)

---

MICHAEL D. WARNER, solely in his official
capacity as Chapter  7 Trustee of Cox Operating,
L.L.C.,
    *Plaintiff*

v.                                                        ADV. PRO. NO. 25-03344
FAB-CON, INC.,
    *Defendant*

---

**MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR DEFAULT
JUDGMENT AGAINST FAB-CON, INC.**

---

**NOW INTO COURT**, through undersigned counsel, comes Michael D. Warner, acting solely in his official capacity as the duly elected Chapter 7 Trustee (the "***Trustee***") for the bankruptcy estate (the "***Estate***") of Cox Operating L.L.C. ("***Cox Operating***") and Plaintiff in the above-captioned adversary proceeding (the "***Adversary Proceeding***"), who respectfully submits this *Memorandum in Support* of his *Motion for Default Judgment* (the "***Motion***") against defendant, Fab-Con, Inc. ("***Defendant***").

---

[1]    The "***Debtors***" in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR, LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).

**JURISDICTION AND VENUE**

1.     The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Court***") has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and the standing General Order of Reference to the Bankruptcy Court (General Order 2012-6) in the Southern District of Texas, entered by the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 157(a).

2.     Venue is proper in this district under 28 U.S.C. § 1409(a) as a proceeding arising in a case under title 11 of the United States Code (the "***Bankruptcy Code***").

3.     The Adversary Proceeding and the claims asserted therein by the Trustee against Defendant are core proceedings pursuant to 28 U.S.C. § 157(b).

**STATUTORY PREDICATES FOR RELIEF**

4.     The statutory and rule-based predicates for the relief requested herein are Bankruptcy Code §§ 105(a), 502(d), 547(b), 550(a), and 551, Rules 7012 and 7055 of the Federal Rules of Bankruptcy Procedure (collectively, the "***Bankruptcy Rules***" and individually "***Bankruptcy Rule***").

**BACKGROUND**

I.     Cox Operating's Prepetition Operations and Cash Management System.

5.     Before filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court on May 13, 2023 (the "***Petition Date***"), Cox Operating regularly engaged in oil and gas operations.[2] Notably, and as of May 15, 2023, "the Debtors [had] interests in approximately 750 producing wells, of which approximately 350 [were] shut-in or suspended, and a majority of

---

[2]     *See* Declaration Under Penalty of Perjury of Rodney Dykes in Support of Trustee's Motion for Default Judgment, a copy of which is attached to the Motion as **Exhibit "A,"** at ¶ 4; Case No. 23-90324, Doc. No. 34 at ¶ 10.

which [were] operated by [Cox Operating] across more than 60 fields."[3] Both before and in the ninety (90) days immediately preceding the Petition Date – that is between February 13, 2023 and the Petition Date (the "*Preference Period*") – Cox Operating maintained business relationships with various business entities, through which it regularly purchased, sold, received, and/or delivered goods and services.[4]

6.      To collect, concentrate, manage, and disburse funds in the Debtors' business, including during the Preference Period, Cox Operating utilized and maintained a cash management system (the "*Cash Management System*").[5] This consisted of several corporate bank accounts at Amarillo National Bank, including the following accounts maintained by Cox Operating: (a) an operating account ending in x7046 (the "*Primary Operating Account*"); and (b) an ancillary operating account ending in x3584 (the "*Ancillary Operating Account*," and together with the Primary Operating Account, the "*Operating Accounts*").[6] From these Operating Accounts, Cox Operating: (a) received revenue derived from sales of oil and gas, non-operating working interests, and other sources; and (b) paid cash for its operational costs, including payment to vendors, suppliers, distributors, and other creditors, including Defendant.[7]

II.      Cox Operating's Transfers During the Preference Period.

7.      During the Preference Period, the Debtors, including Cox Operating, continued to operate their business affairs, albeit in preparation for the filing of voluntary petitions, including

---

[3]     Case No. 23-90324, Doc. No. 34 at ¶ 10.

[4]     Exhibit A, ¶ 4; Case No. 23-90324, Doc. No. 34.

[5]     Exhibit A, ¶ 5; Case No. 23-90324, Doc. No. 10.

[6]     Exhibit A, ¶ 5; Case No. 23-90324, Doc. No. 10.

[7]     Exhibit A, ¶ 5; Case No. 23-90324, Doc. No. 10.

the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise, to certain entities, including Defendant.[8] During this time, Cox Operating: (a) purchased goods from various entities including vendors, creditors, suppliers and distributors and (b) paid for services used to facilitate their business.[9] Defendant was one such vendor.[10]

8.        Between August 3, 2022 and August 31, 2022 – Defendant issued sixty (60) invoices to Cox Operating for goods and services Defendant provided Cox Operating prior to the Petition Date (collectively, the "*Invoices*").[11] Cox Operating's books and records reveal that Cox Operating made two payments or transfers (each a "*Transfer*," collectively the "*Transfers*") totaling $857,108.75 to Defendant during the Preference Period, which is shown through the following table:[12]

| Check No | Check Date | Check Amount | Clear Date | Invoice Paid | Invoice Date | Amount Paid |
|---|---|---|---|---|---|---|
| 38759 | 2/17/2023 | $343,230.86 | 2/22/2023 | 110925 | 8/4/2022 | $16,002.00 |
| | | | | 110932 | 8/4/2022 | $20,631.54 |
| | | | | 110933 | 8/4/2022 | $7,326.00 |
| | | | | 110934 | 8/4/2022 | $11,347.00 |
| | | | | 110935 | 8/4/2022 | $23,720.00 |
| | | | | 110936 | 8/4/2022 | $22,866.00 |
| | | | | 110937 | 8/4/2022 | $24,010.00 |
| | | | | 110939 | 8/4/2022 | $11,504.00 |
| | | | | 110940 | 8/4/2022 | $7,254.00 |
| | | | | 110941 | 8/4/2022 | $4,409.00 |
| | | | | 110943 | 8/4/2022 | $7,870.00 |
| | | | | 110944 | 8/4/2022 | $22,721.00 |
| | | | | 110945 | 8/4/2022 | $24,593.00 |
| | | | | 110946 | 8/4/2022 | $844.00 |

---

[8]    Exhibit A, ¶ 6; Case No. 23-90324, Doc. No. 34.

[9]    Exhibit A, ¶ 6; Case No. 23-90324, Doc. No. 34.

[10]    Exhibit A, ¶ 6.

[11]    Exhibit A, ¶ 7.

[12]    Exhibit A, ¶ 7.

| Check No | Check Date | Check Amount | Clear Date | Invoice Paid | Invoice Date | Amount Paid |
|---|---|---|---|---|---|---|
| | | | | 110947 | 8/4/2022 | $9,662.00 |
| | | | | 110948 | 8/4/2022 | $17,862.00 |
| | | | | 110949 | 8/4/2022 | $22,818.00 |
| | | | | 110950 | 8/4/2022 | $4,413.00 |
| | | | | 110951 | 8/4/2022 | $740.00 |
| | | | | 110952 | 8/4/2022 | $6,517.58 |
| | | | | 110954 | 8/4/2022 | $15,527.82 |
| | | | | 110956 | 8/8/2022 | $12,196.08 |
| | | | | 110957 | 8/8/2022 | $6,035.42 |
| | | | | 110958 | 8/8/2022 | $18,339.62 |
| | | | | 110959 | 8/8/2022 | $6,414.29 |
| | | | | 110960 | 8/8/2022 | $7,456.51 |
| | | | | 111003 | 8/17/2022 | $8,486.00 |
| | | | | 111010 | 8/17/2022 | $1,665.00 |
| 39120 | 3/17/2023 | $513,877.89 | 3/20/2023 | 110942 | 8/4/2022 | $2,977.00 |
| | | | | 110972 | 8/16/2022 | $11,900.00 |
| | | | | 110986 | 8/16/2022 | $5,203.40 |
| | | | | 111000 | 8/17/2022 | $22,957.00 |
| | | | | 111001 | 8/17/2022 | $23,792.00 |
| | | | | 111002 | 8/17/2022 | $24,936.00 |
| | | | | 111004 | 8/17/2022 | $8,002.00 |
| | | | | 111005 | 8/17/2022 | $18,976.00 |
| | | | | 111006 | 8/17/2022 | $12,147.00 |
| | | | | 111007 | 8/17/2022 | $16,583.00 |
| | | | | 111008 | 8/17/2022 | $17,784.00 |
| | | | | 111009 | 8/17/2022 | $16,986.00 |
| | | | | 111013 | 8/17/2022 | $24,052.67 |
| | | | | 111014 | 8/17/2022 | $5,641.38 |
| | | | | 111023 | 8/25/2022 | $1,480.00 |
| | | | | 111024 | 8/25/2022 | $20,999.00 |
| | | | | 111025 | 8/25/2022 | $23,036.92 |
| | | | | 111026 | 8/25/2022 | $15,032.00 |
| | | | | 111027 | 8/25/2022 | $13,213.00 |
| | | | | 111028 | 8/25/2022 | $19,549.00 |
| | | | | 111029 | 8/25/2022 | $13,232.00 |
| | | | | 111030 | 8/25/2022 | $6,682.00 |
| | | | | 111031 | 8/25/2022 | $23,880.00 |
| | | | | 111032 | 8/25/2022 | $21,941.00 |
| | | | | 111033 | 8/25/2022 | $29,211.66 |
| | | | | 111034 | 8/25/2022 | $8,061.95 |
| | | | | 111035 | 8/25/2022 | $21,250.00 |

| Check No | Check Date | Check Amount | Clear Date | Invoice Paid | Invoice Date | Amount Paid |
|----------|-----------|--------------|-----------|--------------|--------------|-------------|
|          |           |              |           | 111036       | 8/25/2022    | $6,310.41   |
|          |           |              |           | 111037       | 8/25/2022    | $25,000.00  |
|          |           |              |           | 111038       | 8/25/2022    | $24,667.34  |
|          |           |              |           | 111048       | 8/30/2022    | $5,950.00   |
|          |           |              |           | 111073       | 8/31/2022    | $22,444.16  |

9.    As indicated above, Cox Operating issued check number 38759 on February 17, 2023 made payable to Defendant in the amount of $343,230.86 ("*Transfer 1*").[13] Transfer 1 cleared the Primary Operating Account on February 22, 2023.[14] Transfer 1, according to Cox Operating's books and records and as indicated in the above table, was remitted in satisfaction of 28 of the Invoices due and owing prior to the respective Transfer.[15]

10.    As indicated above, Cox Operating issued check number 39120 on March 17, 2023 made payable to Defendant in the amount of $513,877.89 ("*Transfer 2*").[16] Transfer 2 cleared the Ancillary Operating Account on March 20, 2023.[17] Transfer 2, according to Cox Operating's books and records and as indicated in the above table, was remitted in satisfaction of 32 of the Invoices due and owing prior to the respective Transfer.[18]

III.    The Debtors' Bankruptcy Filings and Resulting Proceedings.

11.    On May 14, 2023 (the "*Petition Date*"), each of the Debtors, including Cox

---

[13]    Exhibit A, ¶ 8.

[14]    Exhibit A, ¶ 8. A true and correct copy of the check and associated bank records evidencing Transfer 1's clearance are incorporated herein and attached to the Motion, *in-globo*, as **Exhibit "A(1)."**

[15]    Exhibit A, ¶ 8.

[16]    Exhibit A, ¶ 9.

[17]    Exhibit A, ¶ 9. A true and correct copy of the check and associated bank records evidencing Transfer 2's clearance are incorporated herein and attached to the Motion, *in-globo*, as **Exhibit "A(2)."**

[18]    Exhibit A, ¶ 9.

Operating, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.[19] The Court consolidated the Debtors' chapter 11 cases (collectively, the "***Bankruptcy Cases***") for joint administration under the caption, *In Re: MLCJR LLC, et al.*, Case No. 23-90324 (CML) (the "***Bankruptcy Case***").[20]

12.     On July 26, 2023, Defendant filed two (2) separate (yet seemingly identical) proofs of claim (collectively, the "***Proofs of Claim***" and individually, "***Proof of Claim***") as to the Estate.[21] Each Proof of Claim asserts a $3,987,945.82 claim against Cox Operating for "[g]oods and services provided[.]"[22]

13.     On February 28, 2024, Defendant filed that certain *Fab-Con, Inc.'s Application for Allowance of Administrative Expense Claim* seeking allowance of an administrative expense claim against Cox Operating.[23]

14.     That same date, each of the Bankruptcy Cases were converted to chapter 7 of the Bankruptcy Code.[24] Thereafter, the Trustee was elected the chapter 7 Trustee of each of the Bankruptcy Cases. As of May 8, 2024, Michael D. Warner became the Chapter 7 Trustee of each

---

[19]   *See, e.g., In re* MLCJR, LLC, Case No. 23-90324, Doc. No. 1; *In re* M21K, LLC, Case No. 23-90325, Doc. No. 1; *In re* EPL Oil & Gas, LLC, Case No. 23-90326, Doc. No. 1; *In re* Cox Operating, LLC, Case No. 23-90327, Doc. No. 1; *In re* Cox Oil Offshore, LLC, Case No. 23-90328, Doc. No. 1; *In re* Energy XXI Gulf Coast, LLC, Case No. 23-90329, Doc. No. 1; *In re* Energy XXI GOM, LLC, Case No. 23-90330, Doc. No. 1.

[20]   Case No. 23-90324, Doc. No. 103.

[21]   *See* Declaration Under Penalty of Perjury of Michael D. Warner in Support of Trustee's Motion for Default Judgment, a copy of which is attached to the Motion as **Exhibit** "**B**," at ¶ 6.

[22]   Exhibit B, ¶ 6. The Debtor's claims and noticing agent, Kroll, LLC ("***Kroll***"), assigned claim numbers 486 and 706, respectively, to the Proofs of Claim. True and correct copies of the Proofs of have been retrieved from the claims registry maintained by Kroll and are attached to the Motion as **Exhibit** "**B(1)**" and **Exhibit** "**B(2)**," respectively.

[23]   Case No. 23-90324, Doc. No. 1718. A true and correct copy of *Fab-Con, Inc.'s Application for Allowance of Administrative Expense Claim* has been retrieved from the docket and is attached to the Motion as **Exhibit** "**B(3)**".

[24]   Case No. 23-90324, Doc. No. 1720.

of the Debtors' Estates[25], and he remains Trustee as of the date of the filing of the Motion.[26]

    IV.    <u>The Instant Adversary Proceeding and Efforts to Serve Defendant.</u>

    15.    Prior to initiating this Adversary Proceeding, and as part of the due diligence requirements under 11 U.S.C. § 547(b), the Trustee undertook a review of, among other things, the disbursement and accounts payable ledgers, the existence of antecedent debt and payment date data, and certain other miscellaneous items and information that may have made the pursuit of the Estate's claims against Defendant unviable.[27]

    16.    On May 14, 2025, the Trustee initiated the Adversary Proceeding by filing that certain *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* (the "***Complaint***") against Defendant.[28]

    17.    The Texas Secretary of State's records do not indicate that Defendant is registered with the Texas Secretary of State to conduct business. As such, the Trustee conducted an examination of the Louisiana Secretary of State's records.[29] According to the Louisiana Secretary of State's records, Defendant was initially registered with the Louisiana Secretary of State on April 27, 1989 and, at the time the Complaint was filed, Bobby Giles was Defendant's registered agent.[30]

    18.    The Clerk of Court issued summons to Defendant on May 15, 2025 (the

---

[25]    Case No. 23-90324, Doc. Nos. 1919 and 1996.

[26]    Exhibit B, ¶ 2.

[27]    Exhibit B, ¶ 7.

[28]    Adv. Pro. No. 25-03344, Doc. No. 1; Exhibit B, ¶ 8.

[29]    Exhibit B, ¶ 9.

[30]    Exhibit B, ¶ 9.  A true and correct copy of the Louisiana Secretary of State's records regarding Defendant, as printed out of from the Louisiana Secretary of State's website, is incorporated herein and attached to the Motion as **Exhibit "B(4)."**

"***Summons***").[31]

19.     On May 16, 2025, the Trustee served Defendant with the Summons and a copy of the Complaint as prescribed by Bankruptcy Rule 7004, via regular, first-class U.S. mail, postage fully pre-paid, properly addressed as follows:

Fab-Con, Inc.
Bobby Giles
1532 South Burnside Ave., Unit 2
Gonzales, LA 70737.[32]

20.     Pursuant to FED. R. BANKR. P. 7012(a), Defendant's response to the Complaint was due 30 days after the Summons was issued, i.e., no later than June 16, 2025.[33] On June 24, 2025 – over a month after Defendant was served with the Complaint and Summons – Defendant changed its registered agent with the Louisiana Secretary of State.[34] While no attorney has made a formal appearance in the Adversary Proceeding or enrolled on Defendant's behalf,[35] the Trustee and Defendant, through counsel, entered into multiple stipulations and agreed orders (each, a "***Stipulation***") whereby the Court granted extensions of time within which Defendant could file responsive pleadings.[36] The last stipulation extended Defendant's response deadline through October 13, 2025.[37] When no response was filed by that deadline, the Trustee's counsel informed Defendant's counsel of the Trustee's intent to move forward with default proceedings if no

---

[31]   Adv. Pro. No. 25-03344, Doc. No. 3.

[32]   Exhibit B, ¶ 10; Adv. Pro. No. 25-03344, Doc. No. 4.

[33]   Exhibit B, ¶ 11.

[34]   Exhibit B, ¶ 11. *See, also,* Exhibit B(4).

[35]   Exhibit B, ¶ 11.

[36]   *See*, Adv. Pro. No. 25-03344, Docs. No. 6, 9, 12, and 15; Exhibit B, ¶ 11.

[37]   Exhibit B, ¶ 11; Adv. Pro. No. 25-03344, Doc. No. 15.

response is filed:[38]



21.     Shortly after this communication, Defendant's counsel acknowledged the Trustee's

position and requested an extension through October 22, 2025 to file a response:

22.     That same day, the Trustee's counsel spoke with Trevor Mosby – an associate in

---

[38]    True and correct copies of the following communications are attached, *in-globo*, to the Motion as **Exhibit "B(5)"**.

the same law firm as Mr. Briggett – advising that the Trustee expects a response to be filed no later than Monday, October 20, 2025; thereafter, the Trustee's counsel advised Defendant's counsel as follows:

| | |
|---|---|
| **From:** | Abigail W. Mock |
| **To:** | Briggett, Joe; Brandon Brown |
| **Cc:** | mthomas; Kim Heard |
| **Subject:** | RE: Warner v. Fab-Con, Inc. |
| **Date:** | Monday, October 20, 2025 9:50:00 AM |

Joe,

I spoke with Mr. Mosby last Thursday and let him know that the Trustee expects an answer to be filed by today. If no answer is filed, we intend to file a notice of default tomorrow.

Thanks,
Abi

Abigail W. Mock | Associate
Stewart Robbins Brown & Altazan, LLC
301 Main St., Suite 1640
Baton Rouge, LA 70801-0016
Phone: 225-231-9998
Fax: 225-709-9467
amock@stewartrobbins.com

23.     Despite being clear and forthcoming with the Trustee's intentions, no response was filed by Defendant by October 20, 2025.[39] This prompted the Trustee to file that certain *Trustee's Request for Entry of Default*.[40] Thereafter, an *Entry of Default* was signed by the Court and entered into the record of the Adversary Proceeding on December 29, 2025, which provided as follows:

> It appears upon the representation of plaintiff and from the record of the above captioned adversary proceeding (the "Adversary Proceeding") that Fab-Con, Inc. ("Defendant") has failed to plead or otherwise defend this case as required by law.
>
> Therefore, default is entered against Defendant as authorized by Fed. R. Civ. P. 55 and incorporated to this Adversary Proceeding

---

[39]    Exhibit B, ¶ 11.

[40]    Adv. Pro. No. 25-03344, Doc. No. 17.

through Fed. R. Bankr. P. 7055.[41]

24. As of the date this Motion is filed, Defendant has not filed a responsive pleading to the Complaint or otherwise defended the suit, or indicated any intention of doing so.[42]

**ARGUMENT**

25. Before entering a default judgment, Courts will first evaluate "whether such a remedy is appropriate under the circumstances of the case."[43] To guide this analysis, Courts examine:

> [W]hether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obligated to set aside the default on the defendant's motion.[44]

26. The Trustee submits a default judgment against Defendant is appropriate under present circumstances. *First*, Defendant has already admitted the Trustee's "well-pleaded allegations" in its Complaint by failing to answer, which obviates any dispute of material issues of fact.[45] *Second*, Defendant's failure to respond "'threatens to bring the adversary process to a halt,'" which prejudices not only the Trustee, but also the Estate the Trustee is trying to

---

[41] Adv. Pro. No. 25-03344, Doc. No. 20

[42] Exhibit B, ¶ 11.

[43] *Developers Sur. & Indem. Co. v. Cercontec, L.L.C.*, No. 18-1379, 2020 U.S. Dist. LEXIS 44763, at *6-7 (W.D. La. Mar. 13, 2020) (citing *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).

[44] *Developers*, 2020 U.S. Dist. LEXIS 44763, at *7 (quoting *Lindsey v. Pride Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

[45] *Developers*, 2020 U.S. Dist. LEXIS 44763, at *7 ("There are no material issues of fact in dispute because Cercontec admitted to Developers' well-pleaded allegations by failing to enroll new counsel, which resulted in its answer being stricken and the Clerk's entry of default." (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002))).

maximize.[46] *Third*, the Trustee has given Defendant "ample to time answer, which mitigates the harshness of a default judgment."[47]

27.     Of course, and while Defendant has admitted the "'well-pleaded allegations of fact'" in the Complaint by defaulting,[48] the Trustee acknowledges his burden to establish that the facts in the Complaint "give rise to a viable cause of action."[49] The Complaint seeks a judgment against Defendant that:

(i)      avoids and recovers the Transfers under sections 547 and 550 of the Bankruptcy Code;

(ii)     disallows, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any and all claims that Defendant has filed or asserted against Cox Operating;

(iii)    awards the Trustee pre-judgment interest at the maximum legal rate running from the date of the Trustee's judicial demand to return all Transfers to the date of judgment;

(iv)     awards the Trustee post-judgment interest at the maximum legal rate running from the date of the judgment until the date such default judgment is paid in full; and

(v)      imposes all costs and expenses of the Adversary Proceeding against Defendant (collectively, (i) – (v) are referred to herein as the "***Claims***").[50]

28.     For the reasons that follow, the Claims are adequately pled, properly supported, and viable under applicable law. Therefore, it is appropriate for this Court to enter a default judgment against Defendant.

---

[46]    *Developers*, 2020 U.S. Dist. LEXIS 44763, at *7 (quoting *Ins. Co. v. H&G Contractors, Inc.*, No. C-10-390, 2011 U.S. Dist. LEXIS 114940, at *8 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893)).

[47]    *Developers*, 2020 U.S. Dist. LEXIS 44763, at *7-8 (citing *Ins. Co. v. H&G Contractors, Inc.*, No. C-10-390, 2011 U.S. Dist. LEXIS 114940, at *8 (S.D. Tex. Oct. 5, 2011); *Lindsey*, 161 F.3d at 893)).

[48]    *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[49]    *Developers*, 2020 U.S. Dist. LEXIS 44763, at *6 (quoting *Nishimatsu*, 515 F.2d at 1206).

[50]    Exhibit B, ¶ 8; Adv. Pro. No. 25-03344, Doc. No. 1.

I.   Defendant Has Received $857,108.75 in Transfers That Are Avoidable as Preferences Under 11 U.S.C. § 547(b).

29.   11 U.S.C. § 547(b) enables the Trustee to:

> [B]ased on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> > (A) the case were a case under chapter 7 of this title;
> >
> > (B) the transfer had not been made; and
> >
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

30.   These elements will be addressed in turn.

**A. The Transfers Were of an Interest of Cox Operating in Property Made Within Ninety (90) Days of the Petition Date.**

31.   Section 101(54) of the Bankruptcy Code defines "transfer," in pertinent part, as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of

or parting with (i) property; or (ii) an interest in property."[51] While the phrase "interest of the debtor in property" is not defined by the Bankruptcy Code, it has been interpreted by the Supreme Court "to mean '[the] property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'"[52] Similarly, this phrase is considered "to be synonymous with the term 'property of the estate' under § 541,"[53] which includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case."[54]

32.     As detailed above, Cox Operating made the Transfers from the Operating Accounts, of which are both Cox Operating's prepetition accounts.[55] Courts have found that transfers by ACH, wire, or check from the debtor's bank account are prima facie evidence that the transfers are transfers of interest of the debtor in property.[56] Therefore, each of the Transfers constitute a transfer of Cox Operating's interest in property.[57]

---

[51]   11 U.S.C. §101(54)(D).

[52]   *Diamond Offshore Co. v. Bennu Oil & Gas, LLC (In re ATP Oil & Gas Corp.)*, 540 B.R. 294, 304 (Bankr. S.D. Tex. 2015) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)) (alteration to original).

[53]   *ATP Oil*, 540 B.R. at 304.

[54]   11 U.S.C. §541(a)(1).

[55]   Exhibit A, ¶¶ 5, 7-9; Case No. 23-90324, Doc. No. 10.

[56]   *See, e.g., Williams v. Mckesson Corp. (In re Quality Infusion Care, Inc.)*, Nos. 10-36675, 13-3056, 2013 Bankr. LEXIS 5044, at *15 (Bankr. S.D. Tex. Nov. 25, 2013) (finding "copies of bank statements from the Debtors general operating account…show[ing] ACH payments to [Defendant] corresponding to the Transfers" constituted "prima facie evidence that the Transfers are transfers of 'interests of the Debtor in property.'") (citation omitted); *Official Comm. of Unsecured Creditors v. Columbia Forest Prods. (In re Hardwood P-G, Inc.)*, Nos. 06-50057-LMC, 06-5278-LMC, 2007 Bankr. LEXIS 2054, at *5 (Bankr. W.D. Tex. June 12, 2007) ("the fact that the transfers in question were by either wire transfer from Debtors' bank account or by check from the same account is prima facie evidence that the transfers are transfers of interests of the debtor in property.").

[57]   *See, also, Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1117 (5th Cir. 1995) ("the primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment." (citing *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1356 (5th Cir. 1986))).

33.     Similarly, the Transfers were made within the Preference Period. As a threshold matter, the Petition Date is not influenced by Cox Operating's decision to convert its bankruptcy case from chapter 11 to chapter 7;[58] therefore, for purposes of the present 11 U.S.C. § 547(b)(4)(A) analysis, the Petition Date remains May 14, 2023. Moreover, a transfer of funds via check occurs on the date it clears the debtor's bank account.[59] As detailed above, Transfer 1 cleared Cox Operating's Primary Operating Account on February 22, 2023 and Transfer 2 cleared Cox Operating's Ancillary Operating Account on March 20, 2023; both of these dates are within the Preference Period.[60]

34.     Therefore, in satisfaction of 11 U.S.C. § 547(b)(4)(A), the Transfers were transfers of an interest of Cox Operating in property within the Preference Period.

**B. The Transfers Were Made to or for the Benefit of Defendant – a Creditor of Cox Operating.**

35.     Section 101(10) of the Bankruptcy Code defines "creditor" to include, among other things, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]"[61] In turn, Section 101(5) of the Bankruptcy Code defines a

---

[58]   *Vogel v. Russell Transfer, Inc.* 852 F.2d 797, 798-99 (4th Cir. 1988). *See, also,* 11 U.S.C. § 348(a) ("Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.").

[59]   *Barnhill v. Johnson*, 503 U.S. 393, 400 (1992) ("For the purposes of payment by ordinary check, therefore, a 'transfer' as defined by § 101(54) occurs on the date of honor, and not before."); *In re Pioneer Commercial Funding Corp.*, 140 B.R. 951, 957 (Bankr. S.D.N.Y. 1992) ("when funds are wired in from one bank to another with instructions as to their application, the transfer is complete because the wired funds are no longer subject to the control of the transferor.").

[60]   Exhibit A, ¶¶ 8-10.

[61]   11 U.S.C. § 101(10) also defines a creditor to include an "entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title" and an "entity that has a community claim."

"claim" to mean, in pertinent part, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"[62] Put simply, the term "creditor" is defined broadly[63] to encapsulate "virtually every kind of creditor[.]"[64]

36.     Defendant's status as a creditor is shown through multiple sources. *First*, in at least one filing in the Bankruptcy Case, Defendant has represented that it "provided labor, goods, services, materials and/or supplies to Cox Operating" prior to the Petition Date.[65] *Second*, the Proofs of Claim Defendant filed against Cox Operating, are purportedly derived from numerous, purportedly unsatisfied, invoices for goods and services Defendant provided to Cox Operating before the Petition Date.[66] *Finally*, the Debtor's books and records indicate the Invoices, issued by Defendant to Cox Operating, were for labor, goods, services, materials and/or supplies Defendant had provided Cox Operating well before the Petition Date.[67] And as evidenced by the cleared checks attached to the Motion as Exhibits A(1) and A(2), Defendant was the payee of both checks comprising the Transfers, which were remitted to satisfy the Invoices.[68]

37.     Taken together, Defendant is a creditor because it is an entity that had a claim, or a right to payment, from Cox Operating for the goods or services that it supplied to Cox Operating

---

[62]   11 U.S.C. § 101(5)(A).

[63]   2 COLLIER ON BANKRUPTCY ¶ 101.10 (Richard Levin & Henry J. Sommer eds., 16th ed.).

[64]   5 COLLIER ON BANKRUPTCY ¶ 547.03[3] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("a transfer of the debtor's property to or for the benefit of virtually every kind of creditor may be avoided as a preference if the other requirements of section 547(b) are met.").

[65]   Case No. 23-90324, Doc. No. 661, ¶ 2.

[66]   Exhibits B(1) and B(2).

[67]   Exhibit A, ¶ 7.

[68]   Exhibit A, ¶¶ 7-9.

before the Petition Date. Therefore, 11 U.S.C. § 547(b)(1) is satisfied.

**C. The Transfers Were For or on Account of an Antecedent Debt Owed by Cox Operating Before the Transfers Were Made.**

38.    The term "antecedent debt" is not defined in the Bankruptcy Code; however, section 101(12) of the Bankruptcy Code defines the term "debt" as a "liability on a claim." As previously discussed, a "claim" is defined by section 101(5) of the Bankruptcy Code.[69] Significantly, "[a] debtor incurs a debt when he becomes legally obligated to pay it,"[70] and "[a] debt is antecedent if it is incurred *before* the transfer."[71]

39.    According to Cox Operating's books and records, Defendant issued the Invoices to Cox Operating subsequent to Defendant's provision of labor, goods, services, materials and/or supplies to Cox Operating.[72] Thereafter, the Transfers were made to Defendant in satisfaction of the Invoices, i.e., in order to satisfy its pre-existing obligations and thereby reduce its account payable to Defendant.[73] Cox Operating's books and records indicate that the Invoices were due and owing before each respective Transfer.[74] Therefore, the Transfers were "for or on account of an antecedent debt owed by the debtor before such transfer was made," which satisfies 11 U.S.C. § 547(b)(2).

---

[69]    11 U.S.C. § 101(5)(A) (defining claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]").

[70]    *Southmark Corp. v. Marley (In re Southmark Corp.)*, 62 F.3d 104, 106 (5th Cir. 1995) (citing *In re Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir. 1983)).

[71]    *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 316 (5th Cir. 1996) (citing *Southmark*, 62 F.3d at 106) (emphasis original).

[72]    Exhibit A, ¶ 7.

[73]    Exhibit A, ¶¶ 8-9.

[74]    Exhibit A, ¶¶ 8-9.

**D.  The Transfers Were Made While Cox Operating Was Insolvent.**

40.      The Bankruptcy Code defines "insolvent," in pertinent part, as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation," exclusive of certain property.[75]  For purposes of an action under 11 U.S.C. § 547, Cox Operating "is presumed to have been insolvent on and during the 90 days" before the Petition Date.[76] The Trustee is entitled to rely upon this presumption alone to satisfy this element, which presumption Defendant has offered no evidence to rebut. As such, and because the Transfers were made during the Preference Period, the Transfers were made while Cox Operating is presumed to have been insolvent.[77] Therefore, 11 U.S.C. § 547(b)(3) is satisfied.

**E.  The Transfers Enabled Defendant to Receive More Than it Would Under Chapter 7 of the Bankruptcy Code.**

41.      11 U.S.C. § 547(b)(5) contains what is known as the hypothetical liquidation test or greater percentage test. Simply put, this test "requires a comparison between what the preferred creditor actually received and what it would have received under the chapter 7 distribution provisions of the Code if the transfer had not been made."[78]

42.      Cox Operating's Schedules, executed under penalty of perjury by its Chief

---

[75]   11 U.S.C. § 101(32)(A).

[76]   11 U.S.C. § 547(f). *See, also, Emerald Oil*, 695 F.2d at 838 ("The 1978 creation of the presumption of insolvency was a change in the prior law designed to simplify the trustee's former burden of reconstructing the debtor's books and records, even though it was unusual that a debtor was not insolvent for the 90 days before the bankruptcy petition was filed.").

[77]   Exhibit A, ¶¶ 8-10.

[78]   5 COLLIER ON BANKRUPTCY ¶ 547.03[7] (Richard Levin & Henry J. Sommer eds., 16th ed.). *See, also,* 11 U.S.C. § 547(b)(5) ("enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.").

Restructuring Officer, Ryan Omohundro, evidence that, as of the Petition Date, Cox Operating's assets totaled $627,404,335.74 (plus undetermined amounts) while its liabilities totaled $854,285,101.19 (plus undetermined amounts).[79] Such liabilities, however, are likely understated. The Debtors' (now former) claims and noticing agent, Kroll,[80] maintained a claims registry for the Bankruptcy Case, which reveals that the general unsecured claims against Cox Operating's Estate *alone* are in excess of $2.9 billion.[81] This figure does not include the asserted chapter 11 administrative expenses filed in the Bankruptcy Case's docket, which exceed $146 million, and the chapter 7 administrative expenses that continue to accrue.[82]

43.     As of January 20, 2026, according to the Trustee's Form-2, the Trustee holds the sum of $551,653.35 in cash collectively for all of the Debtors' estates.[83]   While the Trustee has avoidance-type and other litigation and/or collection efforts in progress, it is substantially unlikely that the net proceeds from those assets, coupled with the aforementioned current cash, will be sufficient to satisfy all unsecured claims in this matter (let alone the $2.9 billion in general unsecured claims against the Cox Operating Estate).[84]

44.     If Defendant had not received each of the Transfers, which total the sum of $857,108.75, and sought payment of its resulting unsecured claim from the Chapter 7 Trustee, it would therefore share in a pro rata distribution - not payment in full - along with the other $2.9

---

[79]   Case No. 23-90324, Doc. No. 478.

[80]   Case No. 23-90324, Doc. No. 106. Kroll's employment as the claims and noticing agent was terminated, effective February 28, 2024. Case No. 23-90324, Doc. No. 1795.

[81]   Exhibit B, ¶ 12. Such figure does not include claim amounts asserted against the other Debtors' estates.

[82]   Exhibit B, ¶ 12.

[83]   Exhibit B, ¶ 13. A copy of the Trustee's Form-2 is attached to the Motion as **Exhibit "B(6)"**.

[84]   Exhibit B, ¶ 13.

billion plus worth of unsecured creditors' claims against this Estate – well less than the full value of its claim that the Transfers allowed it to receive.[85] As previously explained by this district, "if unsecured creditors receive less than a 100% distribution in a chapter 7, any additional payment received through an alleged transfer necessarily enables the creditor to receive more than it would in a liquidation if the payment was not made."[86] Therefore, the hypothetical liquidation test in 11 U.S.C. § 547(b)(5) is satisfied, along with the other elements of a preferential transfer that were previously discussed in Sections I(A) – I(D) above.

II.    The $857,108.75 in Transfers Can be Recovered From Defendant Under 11 U.S.C. § 550 and Preserved For the Estate Through 11 U.S.C. § 551.

45.    11 U.S.C. § 550(a) provides, in pertinent part, that "to the extent that a transfer is avoided under section…547…of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from…the initial transferee of such transfer[.]" As Defendant is the initial transferee of the Transfers,[87] the Trustee is entitled to recover the Transfers from Defendant under 11 U.S.C. § 550(a).

46.    Similarly, 11 U.S.C. § 551 provides, in pertinent part, that "[a]ny transfer avoided under section…547…of this title…is preserved for the benefit of the estate but only with respect to property of the estate." Thus, to the extent default judgment is entered avoiding the Transfers, such Transfers shall be preserved for the benefit of the Estate.

---

[85]   Exhibit B, ¶ 14.

[86]   *Schmidt v. The Grand Ltd. (In re Black Elk Energy Offshore Operations, LLC)*, 605 B.R. 138, 150 (Bankr. S.D. Tex. 2019) (citing *In re T.B. Westex Foods*, 950 F.2d 1187, 1192 (5th Cir. 1992)).

[87]   Exhibit A, ¶¶ 8-10. *See, also,* 5 COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (Richard Levin & Henry J. Sommer eds., 16th ed.).

III.     Any and all Claims Defendant Has Filed Against Cox Operating Must be Disallowed Pursuant to 11 U.S.C. § 502(d).

47.     Given the interplay among 11 U.S.C. §§ 502(d), 547 and 550, it is routine for a trustee to include all these claims in a single adversary proceeding so "all causes of action are then determined concurrently."[88] In pertinent part, 11 U.S.C. § 502(d) instructs a Court to:

> [D]isallow any claim of any entity from which property is recoverable under section…550…of this title or that is a transferee of a transfer avoidable under section…547…of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section…550…of this title.[89]

48.     This provision "was intended to serve as a mechanism to enforce orders and judgments based on turn-over and avoidance complaints."[90] As articulated above, the Trustee's causes of action against Defendant to avoid and recover the Transfers to Defendant under 11 U.S.C. §§ 547 and 550 are well founded and supported. Consequently, and to the extent that Defendant fails to return the Transfers to the Estate within fourteen (14) days of this Court entering judgment,[91] the Trustee is also entitled to judgment disallowing any and all claims Defendant has asserted against Cox Operating, in full, until Defendant has returned the Transfers to the Estate.[92]

---

[88]    4 COLLIER ON BANKRUPTCY ¶ 502.05[1] (Richard Levin & Henry J. Sommer eds., 16th ed.).

[89]    11 U.S.C. § 502(d) (cleaned up).

[90]    *GMAC Mortg. LLC v. Blitz Holdings Corp. (In re IFS Fin. Corp.)*, Nos. 02-39553, 08-03047, 2008 Bankr. LEXIS 4353, at *12 (Bankr. S.D. Tex. Oct. 2, 2008) (citing *In re Davis*, 889 F.2d 658, 661 (5th Cir. 1989); *In re Odom Antennas, Inc.*, 340 F.3d 705, 708 (8th Cir. 2003)).

[91]    *See, e.g., Davis*, 889 F.2d at 662 ("This section is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate.").

[92]    4 COLLIER ON BANKRUPTCY ¶ 502.05[1] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Section 502(d) requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount or turned over the property received as required under the sections of the Code under which the transferee's liability arises.") (citation omitted).

IV.     The Trustee is Entitled to Pre-Judgment Interest at the Maximum Legal Rate Running From the Date of the Trustee's Judicial Demand.

49.     When a cause of action is derived from a federal statute, federal law will "govern[] the allowance of prejudgment interest[.]"[93] In determining "whether an award of prejudgment interest is within a court's discretion," federal courts will evaluate: "(1) whether the federal act that creates the cause of action precludes such an award; and (2) whether such an award furthers the congressional policies of the federal act."[94] Notably, nothing contained in 11 U.S.C. § 547(b) precludes the authorization of prejudgment interest; to the contrary, courts within the Fifth Circuit recognize that prejudgment interest may be awarded to a plaintiff prevailing upon a chapter 5 cause of action because it is not precluded by statute.[95] Furthermore, awarding prejudgment interest will further the policies underlying 11 U.S.C. § 547(b) because it will: (a) compensate the Estate "for [Defendant's] use of those funds that were wrongfully withheld from the [E]state[] during the pendency of this case" and (b) advance the paramount "bankruptcy policy of equality of distribution among creditors."[96] Therefore, it is appropriate for this Court to award the Trustee prejudgment interest.

---

[93]  *McFarland v. Leyh (In Re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330, 1339 (5th Cir. 1995) (citing *Carpenters Dist. Council v. Dillard Dep't Stores*, 15 F.3d 1275, 1288 (5th Cir. 1994)).

[94]  *Tex. Gen. Petroleum*, 52 F.3d at 1339 (citing *Carpenters*, 15 F.3d at 1288).

[95]  *See, e.g., Tex. Gen. Petroleum*, 52 F.3d at 1339 (finding bankruptcy court did not abuse its discretion awarding prejudgment interest to plaintiff for claims under 11 U.S.C. § 548); *Massan Shipping Indus. v. Strachan Shipping Co.*, 272 B.R. 625, 632 (E.D. La. 2001) (trustee entitled to prejudgment interest for claims under 11 U.S.C. § 547); *Floyd v. Shindler (In re Rodriguez)*, 204 B.R. 510, 518 (Bankr. S.D. Tex. 1995), *aff'd*, 95 F.3d 54 (5th Cir. 1996) ("It is well settled that bankruptcy courts have discretion to award prejudgment interest to a trustee who successfully avoids a preferential or fraudulent transfer, from the time demand is made or an adversary proceeding is instituted, unless the amount of the contested payment was undetermined prior to the bankruptcy court's judgment.") (collecting cases). Notably, and with respect to *Rodriguez*, where a party admits receiving a preferential payment, "is, therefore, known to both the trustee and [defendant] without the need for judicial determination." *Rodriguez*, 204 B.R. at 518.

[96]  *Rodriguez*, 204 B.R. at 518.

50. When courts award prejudgment interest to a successful plaintiff in a chapter 5 cause of action (including a preference), they will utilize the rate set forth in 28 U.S.C. § 1961(a) (i.e., for the week preceding the date a complaint is filed, "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System") and apply it from the date the action is filed.[97] For the week ending May 9, 2025, the weekly average 1 year constant maturity Treasury yield was 4.02%. Therefore, the Trustee requests the Court award prejudgment interest upon the $857,108.75 in recovery, at the rate of 4.02%, which, as of January 23, 2026, amounts to $23,788.64.

V. <u>The Trustee is Entitled to Post-Judgment Interest at the Maximum Legal Rate Running From the Date of the Default Judgment Until the Date it is Paid in Full.</u>

51. Similar to an award of prejudgment interest, Courts have awarded post-judgment interest to a successful plaintiff in a chapter 5 cause of action (including a preference), at the rate set forth in 28 U.S.C. § 1961(a).[98] The Trustee respectfully requests that any Default Judgment entered by the Court include a requirement that Defendant satisfy all interest from the date of judgment until paid in full. To the extent this Court enters the judgment requested herein against Defendant, the Trustee will supply the Court with the appropriate interest rate under 28 U.S.C. § 1961(a).

**SERVICE**

52. As of the date hereof, based upon current knowledge, information, and belief, Defendant may be served through its current registered agent at the following address:

---

[97] *See, e.g., Rodriguez*, 204 B.R. at 518 ("Accordingly, this Court awards prejudgment interest to the trustee at the statutory rate set forth in 28 U.S.C. § 1961(a), accruing from the commencement date of this case."); *Fieldwood Energy III LLC v. Star Measurement Sales & Serv. (In re Fieldwood Energy LLC)*, Nos. 20-33948, 22-3251, 2024 Bankr. LEXIS 626, at *37 (Bankr. S.D. Tex. Mar. 12, 2024) (awarding prejudgment interest for successful preference claim at rate established by 28 U.S.C. § 1961 from date action filed).

[98] *Rodriguez*, 204 B.R. at 518.

Patrick Gros
651 River Highland Blvd
Covington, LA 70433[99]

53.     To the extent the Stipulations[100] are construed by the Court to constitute an appearance "personally or by a representative" under Bankruptcy Rule 7055(b)(2), both Defendant and counsel-signatory to the Stipulations will be served with written notice of the instant Motion at least 7 days before the hearing.

## CONCLUSION

**WHEREFORE**, based upon the foregoing, the Trustee respectfully prays that after due proceedings be had, this Court enter a default judgment, in substantially similar form to the proposed judgment attached hereto, in his favor and against Defendant:

(i)     avoiding and recovering for the Estate, pursuant to 11 U.S.C. §§ 547 and 550, the Transfers made to Defendant totaling $857,108.75;

(ii)    disallowing any and all claims that Defendant has filed or asserted against Cox Operating and/or the Estate pursuant to 11 U.S.C. § 502(d);

(iii)   awarding pre-judgment interest at the maximum legal rate running from the date of the Trustee's judicial demand to return all Transfers to the date of the default judgment;

(iv)    awarding post-judgment interest at the maximum legal rate running from the date of the default judgment until the date such default judgment is paid in full;

(v)     awarding to the Trustee the costs and expenses incurred in the Adversary Proceeding,

(vi)    for such other relief deemed just.

---

[99]   Exhibit B, ¶ 16; Exhibit B(4).

[100]  *See*, Adv. Pro. No. 25-03344, Doc. Nos. 6, 9, 12, and 15.

Dated: January 29, 2026

Respectfully submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:   */s/ Brooke W. Altazan*
William S. Robbins (Tx. Bar # 24100894)
wrobbins@stewartrobbins.com
Brooke W. Altazan (Tx. Bar # 24101002)
baltazan@stewartrobbins.com
Paul Douglas Stewart, Jr. (La. Bar # 24661)
*Admitted to Southern District of Texas*
*(SDTX Federal No. 432642)*
dstewart@stewartrobbins.com
301 Main Street, Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

***Counsel for Michael D. Warner, Chapter 7 Trustee***